UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| KEVIN COLBERT, | ) |  |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | CAUSE NO. 3:07-CV-446 CAN |
| HOUSING AUTHORITY OF THE CITY OF SOUTH BEND, INDIANA, | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

On September 21, 2007, Plaintiff, Kevin Colbert ("Colbert"), filed his complaint in this Court. On January 10, 2008, upon the consent of the parties, this case was reassigned to the undersigned for all purposes. On December 1, 2008, Defendant, Housing Authority of South Bend, Indiana ("Housing Authority"), filed a motion for summary judgment. On January 3, 2009, Colbert filed a response in opposition. On January 21, 2009, Housing Authority filed a reply. On the same day, Housing Authority filed a motion to strike Colbert's response brief and supporting affidavits. This Court may now enter its ruling on all pending matters pursuant to the parties' consent and 28 U.S.C. § 636(c).

**I.  FACTS**

The following facts are primarily undisputed by the parties. Where the facts are in dispute, this Court has determined that the disputes are not material to the resolution of Colbert's claims. On September 20, 2000, Colbert, and African American, was hired by the Housing Authority's maintenance department as a Maintenance Technician ("Technician"). Throughout the course of his employment, Colbert filed multiple charges of discrimination and retaliation

with the EEOC, stemming from three events which took place during his tenure at the Housing Authority.[1] The facts relevant to each are listed as follows.

(1) On March 14, 2003, Colbert was terminated from the Housing Authority, after it was revealed that Colbert had failed to disclose a prior felony conviction. Following reinstatement, on May 20, 2003, Colbert alleges that Housing Authority managers began retaliating against him by telling other Technicians not to associate with him.

(2) On July 31, 2006, a Housing Authority tenant reported a burglary in her building. Two of the victim's neighbors reported having seen two Housing Authority Technicians enter the building and described the two suspects as a Caucasian male and a large, African American male. On October 5, 2006, upon the request of the South Bend Police Department, the Housing Authority provided a list of several Technicians working at the building. Colbert's name was given as part of the list. Doc. No. 29-4 at 5-6. In addition, the names of four other Technicians were given; of which, one was Caucasian and three were African Americans. Id. Colbert claims that his name was given in retaliation for the filing of an EEOC claim and claims that the event amounts to a separate charge of age and race discrimination.

(3) On October 5, 2006, a Housing Authority van caught on fire, destroying Colbert's tools. The Housing Authority's risk manager, Charles Williamson ("Williamson"), requested a

---

[1] On October 29, 2001, Colbert was promoted to Forced Account Coordinator. However, On March 14, 2003, Colbert was terminated after it was discovered that he failed to disclose a prior felony conviction on his application. Colbert appealed his termination; and, on May 20, 2003, Colbert was reinstated. On October 21, 2003, Colbert applied for two promotions. However, because of Colbert's failure to disclose on his prior application, Colbert was deemed unqualified for the promotion.

On August 15, 2006, Colbert filed his first of four charges of discrimination and retaliation with the EEOC, claiming the Housing Authority's decisions to terminate Colbert's employment and not promote him as violations. However, Colbert does not address these initial charges in his brief. See also Colbert Dep., Doc. No. 29-7 at 33. Accordingly, this Court deems these charges waived. See Kochert v. Adagen Med. Intern., Inc., 491 F.3d 674, 679 (7th Cir. 2007) ("undeveloped arguments are waived.").

2

list of Colbert's lost tools, in order to submit a claim to the Housing Authority's insurance carriers. However, both of the Housing Authority's insurance carriers denied coverage because the loss was outside of the scope and deductibles of the policies. Williamson Aff., Doc. No. 29-13 at 2. Twice in that same year, the Housing Authority's insurance carriers had previously denied similar claims, made by other Technicians, in regards to stolen tools. Id. at 3.

The Housing Authority did not typically replace Technician's tools when they were lost, stolen or destroyed, instead, requiring the Technicians to replace their tools themselves.[2] Id. However, the Housing Authority contemplated making an exception for Colbert and another Technician, Alan Taylor ("Taylor"), who had recently had his tools stolen. Id. Williamson received lists of lost tools from both men, but suspected that the lists fraudulently included tools owned by the Housing Authority. Id. at 4. As a result, the Housing Authority requested more information from the men in order to substantiate their claims. Id. As of March 1, 2007 neither Technician had submitted additional information; and the Housing Authority informed them that it was dropping its offer to attempt replacement. Colbert Dep., Doc. No. 29-8 at 7-9; Leonard-Dent Aff., Doc. No. 29-2 at 5. Thereafter, Taylor promptly replaced his stolen tools, but Colbert refused to do so. Fleckner Aff., Doc. No. 29-5 at 7.

Over the course of nearly a year, the Housing Authority reminded Colbert, on multiple occasions, that he was required to replace his tools. Fleckner Aff., Doc. No. 29-5 at 7-11; Williamson Aff., Doc. No. 29-14 at 5; Leonard-Dent Aff., Doc. No. 29-2 at 5-6, 8; Colbert Dep., Doc. No. 29-8 at 11-13. For instance, on June 22, 2007, the Housing Authority reminded Colbert, via a written memorandum, that Colbert needed to replace his tools. Id. Similarly, on

---

[2] The Housing Authority also had a policy, requiring all Technicians to provide the basic tools of the job at the time of their hiring. Fleckner Aff., Doc. No. 29-5 at 2; Pitmann Dep., Doc. No. 29-6 at 4.

July 31, 2007, the Housing Authority sent a second memo, giving Colbert until August 10, 2007 to replace his tools. Id. Colbert did not oblige, however; responding, instead, that the Housing Authority had misinterpreted its policies. Id. On August 16, 2007, the Housing Authority reaffirmed its policy and gave Colbert until August 24, 2007 to comply. Id. As of September 11, 2007, however, Colbert had still not replaced his tools. Id.

Accordingly, on September 14, 2007, the Housing Authority met with Colbert to determine whether Colbert had acquired his tools as required. Leonard-Dent Aff., Doc. No. 29-2 at 8-9; Colbert Dep., Doc. No. 29-9 at 28-30. When it was confirmed that Colbert had still not complied, the Housing Authority terminated Colbert's employment. Id. Colbert claims, however, that his termination was made in retaliation of his previous EEOC filings and claims that his termination amounted to a separate charge of age and race discrimination.

## II.  ANALYSIS

### A.  Summary Judgment Standard

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Lawson v. CSX Transp., Inc., 245 F.3d 916, 922 (7th Cir. 2001). In determining whether a genuine issue of material fact exists, this Court must construe all facts in the light most favorable to the nonmoving party as well to draw all reasonable and justifiable inferences in favor of that party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); King v. Preferred Technical Group, 166 F.3d 887, 890 (7th Cir. 1999). To overcome a motion for summary judgment, the nonmoving party cannot rest on the mere allegations or denials

contained in its pleadings. Rather, the nonmoving party must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial. Celotex v. Catrett, 477 U.S. 317, 322-23 (1986); Robin v. Espo Eng'g Corp., 200 F.3d 1081, 1088 (7th Cir. 2000). Where a factual record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing Bank of Ariz. v. Cities Serv.s Co., 391 U.S. 253, 289 (1968)).

B.   Colbert Fails to Establish a *Prima Facie* Case of Discrimination.

As stated in Smart v. Ball State Univ., 89 F.3d 437, 441 (7th Cir. 1996), "not everything that makes an employee unhappy is an actionable adverse action. Otherwise, minor even trivial employment actions that 'an irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit.'" This case resonates with this warning. Colbert claims two violations under Title VII: (1) that he was discriminated against because of his race, and (2) that he was improperly retaliated against for filing a claim with the EEOC.[3]

To prove racial discrimination under Title VII or § 1981, Colbert may proceed either with direct evidence or under the burden shifting method of McDonnell Douglas Corp. v. Colbert, 411 U.S. 792 (1973). See Velez v. City of Chi., 442 F.3d 1043, 1049 (7th Cir. 2006). Direct evidence can either be: (1) an admission by the decision maker that his actions were based on the prohibited discrimination, or (2) a convincing mosaic of circumstantial evidence that

---

[3] As part of his complaint, Colbert additionally claimed that he was the victim of age discrimination. However, Colbert failed to put forth any evidence or authority in his response to establish even a single element of this claim, other than to say he was over forty years old at the time his name was given as part of the police investigation. As such, this Court determines that Colbert's claim under the ADEA to be waived. See Kochert v. Adagen Med. Intern., Inc., 491 F.3d 674, 679 (7th Cir. 2007) ("undeveloped arguments are waived.").

5

points directly to a discriminatory reason for the employer's action. Davis v. Con-Way Transp. Central Express, Inc., 368 F.3d 776, 783 (7th Cir. 2004); Chiaramonte v. Fashion Bed Group, Inc., 129 F.3d 391, 396 (7th Cir. 1997); Radue v. Kimberly-Clark Corp., 219 F.3d 612, 616 (7th Cir. 2000). Colbert offers no evidence that constitutes an admission by a decision maker that Colbert was treated differently because of his race. Furthermore, Colbert offers no mosaic of evidence that points directly to discrimination because of his race as the reason for the Housing Authority's actions. Nothing Colbert offers constitutes direct evidence.

Because Colbert does not offer direct evidence of discrimination, this Court must consider whether Colbert has provided sufficient evidence under the burden shifting method of McDonnel Douglas to survive summary judgment. See e.g. Blise v. Antaramian, 409 F.3d 861, 866 (7th Cir. 2005) (analyzing a plaintiff's claim under burden shifting method because plaintiff did not offer direct evidence or argue that it existed).

Under the burden shifting method Colbert must establish by a preponderance of the evidence that: (1) he was a member of a protected class; (2) similarly situated employees outside of the protected class were treated more favorably; (3) he suffered a materially adverse employment action; and (4) he performed his job satisfactorily. Velez, 442 F.3d at 1049-50 (citing O'Neal v. City of Chi., 392 F.3d 909, 911 (7th Cir. 2004)); see also McDonnell Douglas Corp., 411 U.S. at 802; Williams v. Williams Elecs., Inc., 856 F.2d 920, 922-23 (7th Cir. 1988).

    1.    Adverse Employment Action

Adverse employment actions extend beyond readily quantifiable losses, but not everything that makes an employee unhappy is an actionable adverse action. Smart, 89 F.3d at 441. Only a severe or pervasive change in the daily conditions of employment may be treated as

discriminatory.  Wash. v. Ill. Dept. of Revenue, 420 F.3d 658, 660-61 (7th Cir. 2005).  For example, a mere change in title has been found not to be an adverse action.  See Crady v. Liberty Nat'l Bank & Trust Co. of Ind., 993 F.2d 132 (7th Cir. 1993).  Likewise, a "bruised ego" does not constitute an adverse employment action.  See Flaherty v. Gas Research Inst., 31 F.3d 451, 457 (7th Cir. 1994).  Because adverse actions can come in many shapes and sizes, a court should consider the particular factual background of each situation when analyzing whether an adverse action is material.  Bryson v. Chi. State Univ., 96 F.3d 912, 916 (7th Cir. 1996).

The parties do not dispute that Colbert's termination constituted an adverse employment action, and this Court assumes that it qualifies under the definitions set forth by this Circuit.  However, this Court concludes that Colbert's other claims do not qualify.  To begin, even assuming that managers in the Housing Authority told other Technicians not to speak with Colbert, Colbert has failed to articulate what harm he incurred as a result of those actions.

Similarly, it is undisputed that the Housing Authority provided Colbert's name, along with several other Technicians, to the South Bend Police Department pursuant to an ongoing burglary investigation.  Colbert alleges that he was singled out as part of the investigation, claiming that he did not fit the description given by the witnesses.  Colbert provides no evidence, however, to show that other Technicians, working at the building at issue, were invidiously left off the list.  Further, Colbert provided no evidence to support his assertion that he did not fit the description given by witnesses at the scene.  As such, this Court can only conclude that the information was provided, solely in response to a request from the South Bend Police Department.  Such cooperation with the authorities, can not reasonably be interpreted as an

adverse employment action on the part of the Housing Authority, which was in any way related to Colbert's race.

### 2. Legitimate Employment Expectations

In addition, Colbert cannot establish that he was performing his job satisfactorily. One must perform his job to the employer's legitimate expectations at the time of the adverse employment action. Luckie v. Ameritech Corp., 389 F.3d 708, 715 (7th Cir. 2004).

The Housing Authority maintains that Colbert's refusal to replace his tools prevented Colbert from performing all of his assigned duties and led to inefficiencies in the Maintenance Department. In particular, the Housing Authority notes that Technicians are regularly assigned individual responsibility for completing work orders, primarily working alone to rehabilitate Housing Authority buildings. The Housing Authority notes that, prior to the fire, Colbert was able to work alone to independently complete work orders. However, the Housing Authority alleges that, after the fire, Colbert could no longer work independently because he frequently needed to borrow other Technicians' tools. Indeed, because of Colbert's refusal to replace his tools, Colbert frequently returned incomplete work orders, claiming he was "unable to do the job without tools." As a result, the Housing Authority was limited to giving Colbert assignments in conjunction with other Technicians.

In his brief, Colbert does not refute the argument that he couldn't satisfactorily do his job without replacement tools. Instead, Colbert argues that the Housing Authority misinterpreted its policy of requiring Technicians to replace their own tools, suggesting that the Housing Authority had previously replaced the tools of another Caucasian Technician. However, Colbert offered no evidence to substantiate his argument.

8

Instead, the evidence is clear that the Housing Authority went above and beyond its stated policies in order to assist Colbert in the replacement of his tools. For instance, the Housing Authority attempted to seek reimbursement for Colbert's tools under its own insurance policies. Then, after the insurance claims were denied, the Housing Authority went a step further and offered to replace Colbert's tools from its own funds. Thereafter, the Housing Authority suspected that Colbert had fraudulently attempted to seek reimbursement for Housing Authority tools and sought supplemental information from Colbert to verify his claim. Only after Colbert refused to provide additional information, did the Housing Authority forgo its unorthodox assistance to Colbert.[4]

As such, and without evidence or argument to the contrary from Colbert, it is clear that Colbert can not establish that he performed his job satisfactorily to establish a *prima facie* case of race discrimination.

3. Less Favorable Treatment

Similarly, Colbert has failed to submit evidence sufficient to establish that he was treated less favorably than other Technicians who were outside of his protected class. Despite his naked assertions, Colbert has provided no evidence to establish that the Housing Authority had ever replaced the tools of a Caucasian Technician. Further, the Housing Authority submitted unrefuted evidence that, in addition to providing the names of three African American Technicians to the South Bend Police Department, it also provided the name of a Caucasian Technician who was working at the building at issue. Colbert offered no evidence to rebut this fact and failed to provide the names of any other Caucasian Technicians who he believes could

---

[4]Indeed, the Housing Authority contemporaneously denied a similar request by a Caucasian Technician for the same reason.

reasonably have been implicated in the police investigation. As such, this Court finds that Colbert can also not establish that he was treated less favorably than other Technicians, outside of his protected class.

In summary, because Colbert has failed to produce sufficient evidence to establish the requisite elements of an adverse employment action, performance of the employer's reasonable job expectations, and less favorable treatment than other similarly situated individuals, not in Colbert's protected class, this Court concludes that Colbert can not establish a *prima facie* case of race discrimination. Having so concluded, this Court now moves to its analysis of Colbert's second claim of retaliation.

    C.    <u>Colbert Fails to Establish a *Prima Facie* Case of Retaliation.</u>

A claim for retaliation is considered separately even if the employee's claims of racial discrimination that are the foundation for the retaliation claim are unfounded. <u>Sweeney v. West</u>, 149 F.3d 550, 554 (7th Cir. 1998). However, this Court finds that Colbert can not establish a *prima facie* case of retaliation for the same reasons that he can not establish a discrimination claim.

In order to state a *prima facie* case of retaliation, Colbert must show that: (1) he engaged in statutorily protected activity; (2) he suffered an adverse action by his employer; (3) was performing the job in a satisfactory manner; and (4) there is a casual link between his protected activity and the adverse action. <u>Id</u>. at 555. <u>See</u> also <u>Stone v. City of Indianapolis Pub. Utils. Div.</u>, 281 F.3d 640, 643 (7th Cir. 2002).

This Court has already determined that any alleged statements, made by the Housing Authority and instructing other Technicians to refrain from talking with Colbert, do not

constitute an adverse employment action. Similarly, this Court rejected Colbert's claim that the Housing Authority's decision to disclose Colbert's name in response to a request by the South Bend Police Department amounted to an adverse employment action. In addition, this Court has already found that Colbert can not show that he was performing his job in a satisfactory manner because he failed to replace his tools, despite policy provisions requiring Colbert to do so and asserted hardship by the Housing Authority. Finally, apart from his own unsupported assertions, Colbert does nothing to establish a causal connection between his EEOC filings and the actions which he claims were retaliatory. As such, this Court concludes that Colbert has failed to provide sufficient evidence to establish a *prima facie* case of retaliation.

    D.    <u>Colbert Offers No Evidence that the Housing Authority's Reasons Were Pretextual.</u>

However, even if Colbert could establish a *prima facie* case of either race discrimination or retaliation, and this Court believes he cannot, he must still posit evidence that suggests the Housing Authority's proffered reasons are merely pretexutual. Initially, the burden shifts to the Housing Authority to articulate a non-discriminatory justification for its action. <u>Velez</u>, 442 F.3d at 1050. If the Housing Authority offers a non-discriminatory justification, Colbert is still required to present sufficient evidence to create a triable issue concerning whether the Housing Authority's proffered reason is merely pretextual. <u>O'Neal</u>, 392 F.3d 909, 911 (7th Cir. 2004).

The Housing Authority claims it gave Colbert's name to the South Bend Police Department, in response to an ongoing criminal investigation. Further, the Housing Authority claims that it included Colbert's name in the list because Colbert had been working on the building in question and reasonably fit the description of the witnesses. Indeed, the Housing

Authority claims, and Colbert does not refute, that it provided the names of several Technicians who had been working at the site, including a Caucasian Technician, who met the description.

Similarly, the Housing Authority claims that it terminated Colbert's employment because Colbert repeatedly refused to replace his tools, violating the Housing Authority's established policies. In addition, the Housing Authority claims, and Colbert does not refute, that it decided to terminate Colbert's employment, only after multiple attempts to assist Colbert in replacing his tools and numerous reminders to Colbert that he must comply with established Housing Authority policies. Indeed, the evidence shows that the Housing Authority attempted to work with Colbert for almost a year after Colbert's tools were destroyed, before finally deciding to terminate Colbert's employment.

Because Housing Authority has proffered legitimate nondiscriminatory reasons for its actions, Colbert, then, has the burden to present some evidence to create a genuine issue of whether Housing Authority's proffered reasons are merely a pretext. O'Neil, 392, F.3d at 911. Pretext means something worse than a business error, such as deceit to cover one's tracks. Davis, 368 F.3d at 784. The focus of the pretext inquiry is whether the employer's stated reason was honest, not whether it was accurate, wise, or well considered. Id.

The only thing Colbert offers to prove his theories is his subjective belief. Colbert has failed to point to any comments, letters, communications, actions by employees or supervisors, or anything to suggest the Housing Authority treated him differently because of his race or because of his EEOC filings. Without any concrete evidence, Colbert's subjective belief is nothing more than speculation. "Speculation does not create a genuine issue of fact; instead it creates a false issue, the demolition of which is a primary goal of summary judgment." Hedberg

v. Ind. Bell Tel. Co., 47 F.3d 928, 932 (7th Cir. 1995). Colbert cannot survive summary judgment because he offers no evidence to create a triable issue as to whether Housing Authority's reasons were merely a pretext.

### III.  HOUSING AUTHORITY' MOTION TO STRIKE

Simultaneous with its reply brief, Housing Authority filed a motion to strike Colbert's response brief and supporting affidavits, claiming that Colbert's arguments lack foundation or are otherwise unsupported. However, even considering all of Colbert's evidence, this Court still concludes that Colbert has failed to establish a *prima facie* case of either racial discrimination or retaliation, sufficient for Colbert's claims to survive summary judgment. As such, this Court **DENIES AS MOOT** Housing Authority' motion to strike. [Doc. No. 37].

### IV.  CONCLUSION

With regard to summary judgment, Colbert has failed to establish a *prima facie* case of race discrimination or retaliation. Furthermore, even if Colbert could establish a *prima facie* case, he has failed to offer any evidence that the Housing Authority's proffered reasons were merely pretextual. Accordingly, this Court **GRANTS** the Housing Authority's motion for summary judgment, with regards to all of Colbert's claims. [Doc. No. 27]. The Clerk is instructed to enter judgment in favor of the Housing Authority and award costs.

**SO ORDERED.**

Dated this 4th Day of February, 2009.

S/Christopher A. Nuechterlein
Christopher A. Nuechterlein
United States Magistrate Judge
